UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANKLIN LOVING,

                              Plaintiff,

                    v.

ROBERT MORTON, *et al.*,

                              Defendants.

No. 20-CV-11135 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Franklin Loving
Malone, NY
*Pro Se Plaintiff*

Ian Ramage, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Franklin Loving ("Plaintiff"), proceeding pro se, brings this Action, pursuant to 42

U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42

U.S.C. § 2000cc, against Robert Morton ("Morton"), the Acting Superintendent of the

Downstate Correctional Facility ("Downstate"), and Noriel DeGuzman ("DeGuzman";

collectively "Defendants"), a physician assistant at Downstate, alleging that Defendants violated

Plaintiff's rights by forcing him to undergo a medical examination without adequate privacy

protections compelled by his religious beliefs.  (*See generally* Third Am. Compl. ("TAC") (Dkt.

No. 23).)  Before the Court is Morton's Motion To Dismiss the TAC (the "Motion") pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (*See* Not. of Mot. (Dkt. No. 28).)[1]

For the reasons stated herein, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from the TAC and are assumed to be true for the purpose

of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension

Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Plaintiff was incarcerated at Downstate throughout the events giving rise to this Action.

(*See generally* TAC.)[2]  Plaintiff alleges that, as "[p]art of the admissions process at

[D]ownstate," Plaintiff had to undergo "a physical examination by a physician and or a nurse."

(*Id.* ¶ 3.)[3]  Plaintiff states that Defendants "d[id] not inform [him] of his right to refuse . . . any or

every part of this examination."  (*Id.*)  Further, Plaintiff alleges that these searches occurred "on

numerous occasions" throughout his incarceration, though he also alleges that the searches were

conducted "for the sole purpose of Reception/Admission to the custody" of the New York State

Department of Corrections and Community Supervision ("DOCCS").  (*Id.* ¶ 1.)

Plaintiff alleges that during the physical examination, he "was called into a curtained area

examination room by a corrections officer" and "directed to take off all of his clothing down to

---

[1] DeGuzman has not been served.  Thus, DeGuzman has not appeared in this Action and
has not joined the instant Motion.

[2] Plaintiff is currently incarcerated in Franklin Correctional Facility.  (*See* Dkt. No. 32.)

[3] The Court refers to particular facts alleged by the paragraph numbers within the
Statement of Facts, which begins on page 5.  However, when referring to other portions of the
TAC, the Court refers to the ECF-stamped page number on the top right of the document.

his underwear." (*Id.* ¶ 4.)  When a medical professional entered into this room, the individual opened the curtain and subsequently failed to close it.  (*See id.* ¶ 5.)  Plaintiff alleges that he protested the medical professional's failure to close the curtain, "ask[ing] that the curtain be drawn . . . so that he can have privacy" but was "denied." (*Id.*)  Plaintiff alleges that this violated his religious beliefs as Muslim, which "forbid[s] for his naked body to be exposed in such a manner." (*Id.*)  Plaintiff then repeats his allegation that he "was not aware that he could refuse this examination." (*Id.*)

Plaintiff states that DOCCS "has established [a] policy that <u>NO</u> inmate shall be required to undress in front of others during medical examinations, other than a physician." (*Id.* ¶ 7 (emphasis in original).)  Pursuant to this policy, Plaintiff alleges that "a gown <u>MUST</u> be provided to the inmate" and that "the inmate is to [be] placed in an examination room, where <u>NO</u> one can witness this inmate, or be visible, <u>ONLY</u> to a physician [sic]." (*Id.* ¶¶ 8, 9 (emphases in original).)[4]

Plaintiff seeks monetary relief of $100,000 "per incident." (*Id.* at 7.)  Plaintiff also seeks "any other further relief" the Court "deems just and proper." (*Id.*)

B.  Procedural Background

Plaintiff's initial complaint was docketed on December 29, 2020, (Dkt. No. 1); Plaintiff filed his amended complaint on January 28, 2021, (Dkt. No. 6).  Plaintiff's request to proceed in forma pauperis ("IFP") was granted on February 23, 2021.  (Dkt. No. 7.)

---

[4] Plaintiff numbered two consecutive paragraphs as number eight.  The Court presumes that Plaintiff meant to continue consecutive numbering and cites paragraph nine, the final paragraph in the statement of facts, accordingly.

On February 26, 2021, the Court issued an Order of Service ("*Valentin* Order") which, inter alia, held that, pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), Plaintiff's Amended Complaint "supplies sufficient information to permit [DOCCS] to identify the unidentified 'John or Jane Doe' Defendant.'" (Order of Service 2–3 (Dkt. No. 9).) The *Valentin* Order required that the Attorney General of the State of New York ("NYAG") ascertain the identity of the John or Jane Doe Defendant. (*See id.* 3.)[5]

Plaintiff filed his Second Amended Complaint on March 29, 2021, which again named "John or Jane Doe, M.D." as a defendant. (*See* Dkt. No. 13). On May 7, 2021, Defense Counsel filed a letter to the Court identifying the John or Jane Doe Defendant as DeGuzman. (*See* Dkt. No. 15.) Defense Counsel also submitted an affirmation of service attesting to having served Plaintiff with a copy of the letter. (*See* Dkt. No. 15-1.) Just over one month later, on July 14, 2021, Plaintiff filed the TAC naming DeGuzman as a new defendant. (*See* Dkt. No. 23). However, DeGuzman was not—and has not yet been —served. (*See generally* Dkt.)

Morton filed the instant Motion and accompanying papers on September 2, 2021. (Not. of Mot.; Def.'s Mem. of Law in Supp. of Def.'s Mot. To Dismiss ("Def.'s Mem.") (Dkt. No. 29).) Plaintiff filed a Memorandum of Law in Opposition to the Motion on September 22, 2021. (Pl.'s Mem. of Law in Opp.'n of Def.'s Mot. To Dismiss ("Pl.'s Mem.") (Dkt. No. 30). On October 15, 2021, Morton filed a Reply Memorandum of Law in further support of the Motion. (Def.'s Reply Mem. of Law in Supp. of Def.'s Mot. To Dismiss ("Def.'s Reply Mem.") (Dkt. No. 31).)

---

[5] On March 8, 2021, the Court issued an identical Valentin Order. (Dkt. No. 12.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior

era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). But where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted). However, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and citation omitted)).

B.  Analysis

Morton makes several arguments in support of his Motion: that he is immune from claims for money damages in his official capacity under the Eleventh Amendment; that Plaintiff fails to allege Morton's personal involvement; that Plaintiff fails to state a constitutional claim or a claim

under RLUIPA; that Morton is entitled to qualified immunity; and that Plaintiff cannot bring state law claims in federal court.  (*See generally* Def.'s Mem.)  Plaintiff nominally disputes each of these arguments, save for Morton's argument regarding the availability of federal courts to press state law claims, to which he says nary a word.  Accordingly, Plaintiff concedes this argument, thereby abandoning those state law claims.  *See P.C.R. v. Fla. Union Free Sch. Dist.*, No. 16-CV-9778, 2022 WL 337072, at *22 (S.D.N.Y. Feb. 4, 2022) ("Courts routinely hold that where a plaintiff 'fails to address [the] defendants' arguments against or even mention several of [his or her] claims,' those claims are deemed 'abandoned.'" (quoting *Robinson v. Am. Int'l Grp., Inc.*, No. 08-CV-1724, 2009 WL 3154312, at *4 & n.65 (S.D.N.Y. Sept. 30, 2009)).[6]

The Court evaluates Morton's remaining arguments on their merits to the extent necessary.

---

[6] Even if Plaintiff did not concede this argument, Plaintiff would still lose on the merits. "New York Correction Law § 24 . . . provides that '[n]o civil action shall be brought in any court of the state . . . against any officer or employee of [DOCCS] . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of duties by such officer or employee.'" *McCray v. Lee*, No. 16-CV-1730, 2021 WL 4392280, at *11 (S.D.N.Y. Sept. 24, 2021) (second and third alterations in original) (quoting N.Y. Corr. Law § 24); *see also Baker v. Coughlin*, 77 F.3d 12, 15–16 (2d Cir. 1996) (holding that § 24 applies to claims in federal court); *Gunn v. Ayala*, No. 20-CV-840, 2021 WL 5647795, at *8 (S.D.N.Y. Dec. 1, 2021) (same).  "Courts in the Second Circuit have long held that [§] 24 precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment." *Davis v. McCready*, 283 F. Supp. 3d 108, 123–24 (S.D.N.Y. 2017) (collecting cases).  New York Corrections Law § 24 applies here, given that the actions in question "arose as a result of [Morton's] discharging [his] duties" as a Superintendent. *McCray*, 2021 WL 4392280, at *11 (quoting *Boyd v. Selmer*, 842 F. Supp. 52, 57 (N.D.N.Y. 1994)).  Finally, there is no refuge in the New York State constitution, which does not create a private right of action "where . . . remedies are available under § 1983." *Id.* (alteration in original) (quoting *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013)).  Thus, Plaintiff's concession has no bearing on the Court's outcome.

1.  Eleventh Amendment Immunity

Plaintiff states that he seeks monetary damages as well as "any other further relief as this [C]ourt deems just and proper."  (TAC 7.)  Morton argues that he is immune from damages in his official capacity pursuant to the Eleventh Amendment.  (*See* Def.'s Mem. 8; Def.'s Reply Mem. 5.)

The Eleventh Amendment of the United States Constitution states: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "This withdrawal of jurisdiction effectively confers an immunity from suit."  *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).  The Supreme Court has made clear that the Amendment's shield extends to state officials sued in their official capacity for monetary damages.  *See id.* at 142–47; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is not different from a suit against the State itself." (citation omitted)); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (explaining that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court," a "bar [which] remains in effect when State officials are sued for damages in their official capacity" (citations omitted)); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–06 (1984) (holding that Eleventh Amendment immunity extends to actions brought against state officials alleging violations of state law).  The Second Circuit has echoed this legal principle.  *See, e.g.*, *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent a state official is sued for damages in his official capacity, such a suit is deemed to be

a suit against the state, and the official is entitled to invoke the Eleventh Amendment belonging to the state."); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The [E]leventh [A]mendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity.").

"New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983." *Dubarry v. Capra*, No. 21-CV-5487, 2021 WL 3604756, at *1 (S.D.N.Y. Aug. 13, 2021) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977)); *see also Quern v. Jordan*, 440 U.S. 332, 341–42 (1979) (holding that § 1983 does not override a state's Eleventh Amendment immunity); *Sabino v. Dep't of Corr. & Cmty. Supervision*, No. 19-CV-7268, 2019 WL 3858622, at *1 (S.D.N.Y. Aug. 16, 2019) ("New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983." (citation omitted)).  "Because [Morton] is an employee of 'DOCCS, which is an arm of the State of New York,' Plaintiff's claims for money damages against [him] in his official capacity must be dismissed." *Gunn*, 2021 WL 5647795, at *3 (some alterations omitted) (quoting *Dubarry*, 2021 WL 3604756, at *1); *see also Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) (per curiam) ("[I]t is clear that the Eleventh Amendment does not permit suit [under § 1983] for money damages against state officials in their official capacities.").

To the extent Plaintiff seeks injunctive relief against Morton in his official capacity under *Ex Parte Young*, such relief is also unavailable.  "[A]n individual can bring suit against a state officer in order to ensure that the officer's conduct is in compliance with federal law." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 71 n.14 (1996) (citing *Ex parte Young*, 209 U.S. 123

9

(1908)).  However, such injunctive relief is only available to remedy "ongoing" or "prospective" wrongs.  *Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020).

Plaintiff has been moved from Downstate—twice, in fact, (*see* TAC 2 (noting Plaintiff was in custody at Bare Hill Correctional Facility upon filing); Dkt. No. 32 (noting Plaintiff's move from Bare Hill to Franklin Correctional Facility))—where he alleges these searches occurred.  Because Plaintiff has been relocated, and because he does not allege that this has reoccurred in his new facility, Plaintiff cannot obtain injunctive relief.  *See Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for . . . injunctive relief against officials of that facility." (quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006))); *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility."); *Verley v. Wright*, No. 02-CV-1182, 2007 WL 2822199, at *9 (S.D.N.Y. Sept. 27, 2007) ("To the extent that [a] plaintiff seeks injunctive relief . . . directed at officials at [the transferring facility], those claims are . . . moot [once the] plaintiff is no longer incarcerated [there].").  Therefore, Plaintiff's claims for monetary and injunctive relief against Morton in his official capacity must be dismissed pursuant to the Eleventh Amendment.

### 2.  Failure to Allege Personal Involvement

Morton also argues that "other than stating his title, Plaintiff's Complaint has no allegations concerning Defendant Morton."  (Def.'s Mem. 4.)  Plaintiff essentially argues Morton's involvement in two distinct ways: 1) that Morton "was aware of the [alleged] constitutional violations," as he "knew of multiple grievances filed concerning this issue," including specifically "review[ing] multiple inmate grievance[s] . . . [but] failed to act to correct

these violations;" and 2) as Superintendent, Morton created and enforced the "policy" or "custom[]" that compelled the searches in the first instance.  (Pl.'s Mem 1, 3–4.)[7]

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under [42 U.S.C.] § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013); *see also Davila v. Johnson*, No. 15-CV-2665, 2015 WL 8968357, at *4 (S.D.N.Y. Dec. 15, 2015) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (citation and quotation marks omitted)).  And in *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit recently "held that 'there is no special rule for supervisory liability[,]' thereby doing away with 'the special standards for supervisory liability' . . . and clarifying that 'a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Falls v. (Police Officer) Detective Michael Pitt*, No. 16-CV-8863, 2021 WL 1164185, at *32 (S.D.N.Y. Mar. 26, 2021) (quotation marks omitted) (quoting *Tangreti*, 989 F.3d at 617, 618).  Therefore, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

---

[7] Plaintiff does not make the latter argument directly.  Rather, when discussing a different argument, Plaintiff opaquely refers to Morton as a "'Moving Force' behind the deprivation of [P]laintiff's rights to privacy, and these violations were 'Policy' and 'Customs' that was caused by the staff at Downstate."  (Pl.'s Mem. 3–4.)  However, pursuant to the Court's duty to "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest," *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)), the Court interprets Plaintiff's point to apply here, articulating a theory that the searches were conducted pursuant to policies or customs created by Morton.

Plaintiff's first theory falls short. "Even before *Tangreti*, receipt by a supervisory official of a letter [or a complaint] from an inmate, without more, has been insufficient to establish [an] official's personal involvement in a § 1983 constitutional claim." *Braxton v. Bruen*, No. 17-CV-1346, 2021 WL 4950257, at *6 (N.D.N.Y. Oct. 25, 2021) (collecting cases); *see also Smart v. Annucci*, No. 19-CV-7908, 2021 WL 260105, at *5 (S.D.N.Y. Jan. 26, 2021) ("That [the defendant] failed to act on [the] [p]laintiff's [or others' analogous] complaints . . . cannot support the inference that [he], through '[his] own individual actions, [has] violated the Constitution.'" (quoting *Tangreti*, 983 F.3d at 615)); *Houston v. Schiroro*, No. 11-CV-7374, 2014 WL 6694468, at *15 (S.D.N.Y. Nov. 26, 2014) ("[R]eceipt of a grievance does not constitute personal involvement." (citation omitted)); *Walker v. Pataro*, No. 99-CV-4607, 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability."). Thus, Plaintiff cannot establish Morton's involvement solely via his alleged receipt of prior complaints, be they his complaints or from other similarly situated inmates.

Plaintiff's second theory, however, adequately alleges his involvement. Plaintiff plainly describes an actual policy: mandating medical examinations upon being admitted or received into custody. (*See* TAC ¶¶ 3–4.) And "[a]lthough the Second Circuit generally rejected *Colon* [in *Tangreti*], *Tangreti* does not suggest that *Colon*'s third factor—whereby a defendant can be said to be personally involved in a constitutional violation if he 'created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom,'—could never form the basis of an official's liability." *Stone #1 v. Annucci*, No. 20-CV-1326, 2021 WL 4463033, at *8 (S.D.N.Y. Sept. 28, 2021) (citation omitted)). Defendants, in

their Memoranda, fail to respond to this argument, focusing instead on Morton's role vis-à-vis the aforementioned complaints as well as his position in the chain of command at Downstate. (*See* Def.'s Mem. 3–4; Def.'s Reply Mem. 2–3.)  As a result, Defendants have effectively conceded the point that Plaintiff has adequately pled Morton's involvement via the policy or custom he established and or effectuated in his role as Superintendent.  *See Scott v. JPMorgan Chase & Co.*, No. 13-CV-646, 2014 WL 338753, at *10 (S.D.N.Y. Jan. 30, 2014) (collecting cases to conclude that when a party's "[m]emorandum of [l]aw does not respond to [an] argument, [the party] effectively concedes these arguments by [its] failure to respond to them" (citation omitted)), *aff'd*, 603 F. App'x 33 (2d Cir. 2015).  Therefore, the Court holds that Plaintiff has adequately pled Morton's involvement.

### 3.  Failure to State a Constitutional Claim

In the TAC, Plaintiff asserts a violation of his "federal constitutional rights," naming specifically the Eighth and Fourteenth Amendments.  (TAC 2.)  Defendants make specific reference to the First and Eighth Amendment, (*see* Def.'s Mem. 4–6), while also citing cases that discuss the search under Fourth Amendment principles, (*see id.* at 5 (citing, e.g., *Brown v. City of New York*, No. 18-CV-3287, 2020 WL 1819880, at *5 (S.D.N.Y. Apr. 9, 2020)).  Thus, the Court construes the TAC as having brought this claim under all three Amendments and will evaluate the claim under each Amendment accordingly.[8]

---

[8] Additionally, Plaintiff makes one passing reference to the Fourteenth Amendment, (TAC ¶ 2), but fails to discuss anything related thereto, (*see generally id.*).  Construing the passing reference liberally, the Court could interpret this reference as Plaintiff making a claim under the Equal Protection Clause, but the claim nonetheless fails.  The Equal Protection Clause of the Fourteenth Amendment guarantees the right to be free from "invidious discrimination in statutory classifications and other governmental activity." *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) (quoting *Harris v. McRae*, 448 U.S. 297, 322 (1980)).  "The Equal Protection Clause

### a.  First Amendment

Plaintiff alleges that, as a Muslim, he is forbidden from exposing his body, and thus his strip search violated his Free Exercise rights under the First Amendment.  (*See* TAC ¶¶ 5–6.) Defendants argue that the conduct at issue did not rise to a First Amendment violation.  (*See* Def.'s Mem. 4–5; Def.'s Reply Mem. 3–4.)

"A regulation that impinges on a prisoner's freedom of religion must be rationally related to a legitimate penological interest to survive First Amendment scrutiny."  *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 324 (S.D.N.Y. 2006), *aff'd*, 461 F. App'x 18 (2d Cir. 2012). "Reasonable strip searches of prisoners, regardless of their religion, are generally acceptable under the First Amendment because they further the compelling governmental interest of penological safety."  *Id.* (citation omitted).  Accordingly, "courts in this District have consistently rejected claims that standard strip searches violate the First Amendment rights of Muslim inmates whose religion might forbid them from being seen naked by other individuals." *Pizarro v. Bd. of Corr.*, No. 16-CV-2418, 2018 WL 3462512, at *5 (S.D.N.Y. July 17, 2018) (collecting cases).[9]

---

[thus] requires that the government treat all similarly situated people alike."  *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).  Therefore, "[t]o state a claim for an equal protection violation, [a plaintiff] must allege that a government actor intentionally discriminated against [him or her] on the basis of race, national origin or gender."  *Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999).  "There is no allegation in the [TAC] of any 'similarly-situated' individuals who were treated differently," and "[t]o the extent that Plaintiff may be pleading a 'class of one' equal protection claim, he also fails to mention it in the [TAC]." *Lombardi v. Suffolk County*, No. 04-CV-1216, 2007 WL 446733, at *7 (E.D.N.Y. Feb. 7, 2007. Accordingly, Plaintiff fails to allege a violation.

[9] Notwithstanding this general principle, additional allegations regarding the context of a strip search could prove sufficient to survive a motion to dismiss.  *See, e.g., Green v. Martin*, 224 F. Supp. 3d 154, 167–68 (D. Conn. 2016) (denying a motion to dismiss, albeit on Fourth

As Morton makes clear in his motion papers, there are myriad legitimate penological interests compelling a routine search of inmates upon their reception into DOCCS' custody: "assess their health; control the spread of germs; provide incarcerated individuals necessary treatment; and to determine if more extensive examinations are needed." (Def.'s Mem. 4.) Plaintiff does not seriously dispute this argument in any manner; while his submission asserts that Morton committed a "constitutional violation," he makes no reference to the First Amendment, let alone to the elements thereof raised by Morton, i.e. that the searches in question did not, in fact, serve a legitimate penological interests. (*See* Pl.'s Mem. 2.) Thus, Plaintiff effectively concedes this argument and abandons this claim. *See, e.g.*, *P.C.R.*, 2022 WL 337072, at *22 ("Courts routinely hold that where a plaintiff 'fails to address [the] defendants' arguments against or even mention several of [his or her] claims,' those claims are deemed 'abandoned.'" (quoting *Robinson*, 2009 WL 3154312, at *4 & n.65))). The Court therefore grants the Motion to the extent Plaintiff's claim arises out of a First Amendment violation.

### b.  Fourth Amendment

"Generally, strip searches have been upheld as a reasonable security measure within a correctional facility even in the absence of probable cause as long as they are related to a legitimate penological goal." *Jean-Laurent*, 438 F. Supp. 2d at 323 (collecting cases); *see also Brown*, 2020 WL 1819880, at *4 ("Under controlling Second Circuit precedent, '[r]outine . . . strip searches of inmates, including body cavity inspections, do not violate the Fourth Amendment.'" (quoting *Castro-Sanchez v. N.Y. State Dep't of Corr. Servs.*, No. 10-CV-

---

Amendment grounds, where the allegations "regarding the manner and justifications for [strip] searches" adequately claimed that the search did not serve a penological interest and was thus unreasonable such that the case could not be resolved "based solely on the allegations" and instead "require[d] development of the factual record").

8314, 2011 WL 6057837, at *8 (S.D.N.Y. Dec. 6, 2011)).  Indeed, the Supreme Court has upheld visual searches of body cavities as part of a routine intake process for prison inmates: "deference must be given to the officials in charge of the jail unless there is 'substantial evidence' demonstrating their response to the situation is exaggerated."  *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 330, 339 (2012) (quoting *Block v. Rutherford*, 468 U.S. 576, 584–85 (1984)).  Conversely, "a strip search is unconstitutional if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish."  *Jean-Laurent*, 438 F. Supp. 2d at 323 (collecting cases).

Here, Plaintiff alleges only that the search occurred as part of a medical examination, during which—notwithstanding Plaintiff's protest—the curtain affording him privacy was not closed, and that Plaintiff's religious beliefs mandated such privacy.  (*See* TAC ¶¶ 3–7.)  In other words, Plaintiff fails to allege the search served no penological interest, *see Perkins v. City of New York*, No. 14-CV-3779, 2017 WL 1025987, at *3 (S.D.N.Y. Mar. 15, 2017), or that the search was "conducted intentionally to harass or embarrass [him]," *Walker v. Ponte*, No. 14-CV-8507, 2016 WL 4411415, at *5 (S.D.N.Y. Aug. 18, 2016); *Brown*, 2020 WL 1819880, at *5 ("[The plaintiff] has not alleged any facts suggesting that the strip search was conducted with the specific intent to humiliate, harass, or abuse him.  Absent any allegations suggesting an improper motive, [the plaintiff] has failed to establish that the strip search violated the Fourth Amendment.").

Plaintiff's attempt to circumvent that on reasonableness grounds is unavailing.  Specifically, Plaintiff cites to a case from this district, *Corr. Officers Benev. Ass'n of Rockland Cnty. v. Kralik*, No. 04-CV-2199, 2011 WL 1236135 (S.D.N.Y. Mar. 30, 2011), and argues that the "'frequent' or regular' viewing of an inmate[']s private body parts" gave rise to a

16

constitutional violation, (Pl.'s Mem. 2).[10]  Plaintiff's pleadings fall short of the standard set forth in *Kralik* in two crucial ways.

First, *Kralik*'s holding is limited to instances in which a plaintiff was viewed in the context of a search "by a guard of the opposite sex."  2011 WL 1236135, at *11.  While Plaintiff refers to himself using male-identifying pronouns, (*see generally* TAC (using "his" or "him" as well as using "Mr." in the return address on the envelop)), Plaintiff does not expressly allege that he was ever viewed by a female guard.  Indeed, his only reference to gender is to say that "[u]pon the doctor entering th[e] [examination room], *he or she* d[id] not close the curtain." (TAC ¶ 5 (emphasis added).)  Similarly, Defense Counsel's letter does not identify DeGuzman's gender insofar as it uses no gender-specific pronounces and refers to DeGuzman only as "the individual."  (*See* Dkt. No. 15.)  Moreover, there is no allegation that Morton instituted a policy by which Plaintiff or any other inmate was required to be seen by a guard of the opposite sex.

Second, even if the Court were to assume that Plaintiff was seen by a guard of the opposite sex, Plaintiff does not adequately allege that such examinations were "regular."  *Kralik*, 2011 WL 1236135, at *11.  Plaintiff vaguely asserts that this happened on "numerous occasions."  (TAC ¶ 1.)  Plaintiff does not approximate the number of searches that occurred, nor does he state the time period during which these searches were to have occurred—the two factors

---

[10] Plaintiff states that this viewing "did violate the Fourth Amendment rights to privacy and the Fourth Amendment against cruel and unusual punishment."  (Pl.'s Mem. 2.)  Because Defendant only cited the Fourth Amendment in his briefing papers, pro se Plaintiff seemingly responded in kind.  Unhelpfully, *Kralik* cabins its holding as having been based on the "right to privacy" without articulating the specific Amendment on which it's based.  2011 WL 1236135, at *12.  However, *Kralik* itself cites to caselaw on this issue that sounds in the Fourth Amendment.  *See id.* at *11 n.13, 14 (citing cases from the Ninth Circuit, the Fourth Circuit, the Southern District of New York, and the District of Connecticut, each of which evaluated strip searches vis-à-vis the Fourth Amendment).)  Accordingly, the Court evaluates this argument in the context of the Fourth Amendment.

that comprise the frequency of an event.  Rather, as noted *supra*, Plaintiff's Complaint and

argument in opposition to the Motion is aptly considered merely a "formulaic recitation of the

elements of a cause of action" that is insufficient to withstand a motion to dismiss.  *Iqbal*, 556

U.S. at 678 (quotation marks omitted).

Additionally, Plaintiff seemingly attempts to bootstrap this allegation in his opposition

papers by pointing to the medical examinations of other unnamed incarcerated persons.  (*See*

Pl.'s Mem. 2 (noting that such searches "expos[ed] *other inmates* to no privacy at all (emphasis

added)); *see also* Def.'s Reply Mem. 3 ("Plaintiff's reliance on the medical examinations of

other incarcerated persons to raise his singular examination to 'frequent' and 'regular' is

misplaced.").)  But there is no caselaw that suggests that Plaintiff, suing individually, may

reinforce his pleadings by cursorily alleging synonymous wrongs done unto similarly situated

inmates.  *Cf. Martinez v. Lape*, No. 09-CV-665, 2011 WL 4527943, at *8 (N.D.N.Y. Mar. 28,

2011) (recommending granting a motion to dismiss notwithstanding a plaintiff's allegations of

other inmates' comparable harms, as such allegations would not "raise [the plaintiff's] claim

above a speculative level"), *report and recommendation adopted*, 2011 WL 4528980 (N.D.N.Y.

Sept. 28, 2011).

Because Plaintiff failed to plausibly allege that he was searched for any reason beyond

penological interests or that the searches were undertaken regularly and by members of the

opposite sex, the Court grants the Motion to the extent the claim sounds in the Fourth

Amendment.  *See Washington v. Melis*, No. 16-CV-6469, 2018 WL 2324079, at *4 (S.D.N.Y.

May 22, 2018) (collecting cases to hold that where a plaintiff "failed to allege any facts

suggesting that there was any sort of regularity to [the defendant's] conduct" and instead alleged

only "a single incident" wherein the plaintiff may have been inadvertently seen nude by a

member of the opposite sex, the plaintiff's allegations are "insufficient to allege a violation of the

Fourth Amendment right to privacy"); *cf. Israel v. City of New York*, No. 11-CV-7726, 2012 WL

4762082, at *3 (S.D.N.Y. Oct. 5, 2012) (finding intake strip searches permissible and that "the

presence of other inmates and officers, males and females, does not alter this determination");

*Kralik*, 2011 WL 1236135, at *11 ("More recent cases in this Circuit and elsewhere addressing

inmates' right to privacy suggest that occasional, indirect, or brief viewing of a naked prisoner

by a guard of the opposite sex may be permissible, but that 'regular and close viewing' is

prohibited." (footnote omitted)); *Baker v. Welch*, No. 03-CV-2267, 2003 WL 22901051, at *20

(S.D.N.Y. Dec. 10, 2003) (holding that when deciding Fourth Amendment claims, "the balance

should be struck to allow incidental . . . viewing but prohibit regular . . . viewing").

### c.  Eighth Amendment

Plaintiff argues that by forcing him to comply with the search in question, he was "forced

to endure cruel and unusual punishment."  (TAC ¶ 2.)  Morton asserts that Plaintiff failed to

allege conduct "serious enough to amount to cruel and unusual punishment" or that "the charged

official acted with a sufficiently culpable state of mind."  (Def.'s Mem. 5–6.)

The Eighth Amendment of the Constitution provides that "cruel and unusual punishments

[shall not be] inflicted."  U.S. Const. amend. VIII.  "After incarceration, only the unnecessary

and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth

Amendment."  *Whitley v. Albers*, 475 U.S. 312, 320 (1986) (cleaned up) (quoting *Ingraham v.

Wright*, 430 U.S. 651, 670 (1977)).  Pursuant to this standard, "a prison official violates the

Eighth Amendment only when two requirements are met": (1) as an objective matter, the alleged

deprivation must be "sufficiently serious," and (2) the alleged perpetrator must, subjectively,

possess a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quotation marks omitted).

"Under certain limited circumstances, the manner in which a search is conducted may give rise to an Eighth Amendment claim." *George v. City of New York*, No. 12-CV-6365, 2013 WL 5943206, at *9 (S.D.N.Y. Nov. 6, 2013); *see also Ruffin v. Travers-Marsh*, No. 17-CV-2564, 2018 WL 3368726, at *4 (S.D.N.Y. July 10, 2018) ("Although such claims are more commonly brought under the Fourth Amendment, the manner in which a strip search is conducted may in certain circumstances give rise to an Eighth Amendment claim." (quoting *Show v. Patterson*, 955 F. Supp. 182, 191 (S.D.N.Y. 1997))).  Yet "[e]ven where inmates allege aggressive or inappropriate behavior during strip searches, courts are reluctant to find that such activity rises to the objectively serious level of an Eighth Amendment violation." *Vaughn v. Strickland*, 12-CV-2696, 2013 WL 3481413, at *3 (S.D.N.Y. July 11, 2013) (citation omitted). In other words, "[f]or challenges to strip searches in particular, to state an Eighth Amendment violation, courts in this Circuit require that a plaintiff allege that the defendants engaged in *egregious conduct*." *Holland v. City of New York*, 197 F. Supp. 3d 529, 545 (S.D.N.Y. 2016) (emphasis added) (citations omitted); *Little v. City of New York*, No. 13-CV-3813, 2014 WL 4783006, at *3 (S.D.N.Y. Sept. 25, 2014) ("[C]ourts in this Circuit require the plaintiff to allege that the defendant engaged in egregious conduct during the strip search to state an Eighth Amendment violation.").

No such egregious conduct is alleged here; Plaintiff alleges only that he was "directed to take off all of his clothing down to his underwear," resulting in momentary exposure.  (TAC ¶ 4.) But "a strip search without elements of sexual harassment, excessive force, or indeed any physical contact at all is not 'sufficiently serious' under the objective prong to support a claim

based on cruel and unusual punishment under the Eighth Amendment." *George*, 2013 WL 5943206, at *10.

Analogous claims and concomitant dismissals make clear the deficiency in Plaintiff's claim with regard to this objective prong.  For example, a court in this District dismissed an Eighth Amendment claim where a male plaintiff was "forced to strip down to [his] undergarments, 'paraded' past female correctional officers, and required to sit on a [Body Orifice Security Scanner] chair after other unclean inmates sat on the same chair." *Amaker v. Lee*, No. 13-CV-5292, 2019 WL 1978612, at *14 (S.D.N.Y. May 3, 2019).  Another court in this District similarly dismissed such a claim where a plaintiff was "forced . . . to undergo a routine where he had to lift his penis and spread his buttocks about three times" as part of the strip search, as such actions were "not severe enough" to give rise to such a claim.  *LaRocco v. N.Y.C. Dep't of Corr.*, No. 99-CV-9759, 2001 WL 1029044, at *5 (S.D.N.Y. Aug. 31, 2001), *report and recommendation adopted*, Order, *LaRocco v. N.Y.C. Dep't of Corr.*, No. 99-CV-9759, (S.D.N.Y. Sept. 26, 2001), Dkt. No. 31.  A third court in this District yet again dismissed a cruel and unusual punishment claim as having failed to allege sufficiently serious conduct where the plaintiffs alleged that "strip search was conducted to humiliate the inmates and 'make a spectacle' for the new recruits," because the plaintiffs lacked any allegations "that the corrections officers sexually or verbally harassed them" or that there was "any inappropriate physical contact." *George*, 2013 WL 5943206, at *10.  In other words, in the Second Circuit, "allegations of far more serious misconduct by corrections officers than those alleged in this case have consistently been held insufficiently serious to state a claim under the Eighth Amendment." *Green*, 224 F. Supp. 3d at 169; *see also George*, 2013 WL 5943206, at *10 ("[A]s demonstrated

by the cases cited above, allegations of far more serious misconduct by corrections officers have consistently been held insufficiently serious to state an Eighth Amendment claim.").

Having failed to allege sufficiently serious conduct, Plaintiff cannot satisfy the objective requirement of an Eighth Amendment violation; the Court therefore dismisses Plaintiff's claim to the extent it sounds in a violation of the Eighth Amendment.[11]

### 4.  Failure to State a RLUIPA Claim

Finally, Plaintiff presses a claim under RLUIPA.  (*See* TAC 2.)  Defendants argue that Plaintiff fails to state a claim under RLIUPA insofar as Plaintiff seeks only monetary damages, which is unavailable under RLUIPA.  (*See* Def.'s Mem. 9.)

"RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities."  *Vasquez v. Rockland County*, No. 15-CV-8912, 2017 WL 456473, at *8 (S.D.N.Y. Feb. 1, 2017) (quoting *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014)); *see also Keitt v. Hawk,* No. 13-CV-850, 2015 WL 1246058, at *11 (N.D.N.Y. Mar. 18, 2015) ("Monetary damages are not available under RLUIPA.").  In a case on which Plaintiff relies, (*see* Pl.'s Mem. 4–5), the Second Circuit specifically said: "RLUIPA prohibits both the recovery of money damages from state officers sued in their official capacities and in their individual capacities," *Tanvir v. Tanzin*, 894 F.3d 449, 465 (2d Cir. 2018), *aff'd*, 141 S. Ct. 486 (2020) (citation omitted).  Rather, a plaintiff may only seek injunctive relief to redress a RLUIPA violation, irrespective of whether an individual is sued in his official or individual

---

[11] Because Plaintiff fails to satisfy one of two necessary conditions—the objective inquiry—the Court need not analyze the sufficiency of Plaintiff's claims regarding the subjective prong of the Eighth Amendment analysis.  *See George*, 2013 WL 5943206, at *10 (foregoing an analysis of the subjective prong where the court determined that the objective prong was not adequately alleged).

capacity. *See Holland*, 758 F.3d at 224; *Fortress Bible Church v. Feiner*, 734 F. Supp. 2d 409, 520 (S.D.N.Y. 2010) ("It is readily apparent that injunctive relief constitutes appropriate relief under RLUIPA." (quotation marks omitted)), *aff'd*, 694 F.3d 208 (2d Cir. 2012).

Not only does Plaintiff not specifically seek any form of injunctive relief, but even if he did, such "relief is rendered moot by his transfer away from the facility where the events giving rise to his claim took place." *Casey v. Pallito*, No. 12-CV-284, 2013 WL 6673623, at *19 (D.Vt. Dec. 18, 2013); *cf. Lopez v. Cipolini*, 136 F. Supp. 3d 570, 589 (S.D.N.Y. 2015) (citing *Casey* as well as other cases that dismissed constitutional claims for sake of mootness given the plaintiff's transfer of facility or release in order to dismiss as moot a RLIUPA claim wherein the inmate plaintiff had been released from custody). In other words, the only remedy available to Plaintiff under RLIUPA—to the extent Plaintiff sought it—was nullified upon his transfer. Accordingly, Plaintiff's RLIUPA claim must be dismissed.[12]

### III.  Conclusion

For the foregoing reasons, Morton's Motion is granted. In light of Plaintiff's pro se status, and because this is the first adjudication of Plaintiff's claims on the merits, the dismissal is without prejudice. *See Terry v. Incorporated Village of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings" unless "amendment would be futile"). Should Plaintiff choose to file

---

[12] As stated *supra*, Morton also argues that he is entitled to qualified immunity. (*See* Def.'s Mem. 6–8.) "The Court will not opine on whether he is entitled to qualified immunity, however, because Plaintiff has not plausibly pled that he is entitled to relief." *Valde-Cruz v. Russo*, No. 20-CV-9240, 2022 WL 785169, at *10 n.4 (S.D.N.Y. Mar. 15, 2022); *see also Posr v. City of New York*, No. 10-CV-2551, 2013 WL 2419142, at *10 n.8 (S.D.N.Y. June 4, 2013) ("Because [the defendant] did not violate [the] [p]laintiff's [constitutional] rights, there is no need to consider if [the defendant] is entitled to qualified immunity."), *aff'd sub nom. Posr v. Ueberbacher*, 569 F. App'x 32 (2d Cir. 2014).

an amended complaint, he must do so within 30 days of this Opinion, addressing the deficiencies identified herein.  The amended complaint will replace, not supplement, the complaint currently before the Court.  It therefore must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider.  If Plaintiff fails to abide by the 30-day deadline, this Action could be dismissed with prejudice.

Additionally, as indicated in Footnote 1, DeGuzman has not been served.  Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).  Because the TAC was filed on July 14, 2021, service should have been effected by no later than October 12, 2021.  Accordingly, Plaintiff shall show cause by no later than 30 days from the date of this Opinion & Order as to why this case should not be dismissed against DeGuzman for failure to serve.

Finally, the Court finds that dismissal of Plaintiff's claims against DeGuzman is proper in light of the aforementioned grounds for dismissal.  *See* supra II.B.1, II.B.3, II.B.4.  As such, Plaintiff has 30 days from the date of this Opinion & Order to show cause as to why his claims should not also be dismissed against DeGuzman on the merits, i.e. beside his failure to serve DeGuzman.

24

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 28), and to mail a copy of this Opinion & Order to Plaintiff's address listed on the docket.

SO ORDERED.

Dated:   July 27, 2022
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge